UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| JOHN EDWARD HUSKIN, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | Nos. 3:08-CR-170-TAV-HBG |
| v. | ) | 3:12-CV-320-TAV |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

**REPORT AND RECOMMENDATION**

Petitioner John Edward Huskin, a federal prisoner, pleaded guilty [Doc. 33][1] to three felonies: marijuana trafficking, possession of marijuana precursors knowing and intending that they would be used to manufacture methamphetamine, and being a felon in possession of firearm and ammunition. In his plea agreement [Doc. 34], the Petitioner waived the right to file a direct appeal of his conviction or sentence except that he retained the right to appeal a sentence "above the sentencing guideline range as determined by the district court."[2] [Doc. 34, ¶10(a)] On July 7, 2011, United States District Judge Thomas A. Varlan found the Petitioner to be a career criminal and sentenced him to 120 months of incarceration, which sentence was below the guideline range imposed by the Court. The Court entered a Judgment [Doc. 43] of conviction on July 12, 2011. From the Petitioner's initial appearance through sentencing and the entry of Judgment, the Petitioner was represented by Assistant Federal Defender Kim Tollison.

---

[1] All citations are to the record in Case No. 3:08-CR-170.
[2] The Defendant also waived the right to file any motion pursuant to 28 U.S.C. § 2255 or to attack his sentence collaterally, except that he retained the right to raise claims of ineffective assistance of counsel about which he did not know at the time that the Judgment was entered. [Doc. 34, ¶10(b)]

The Petitioner has now filed a timely *pro se* motion to vacate, set aside, or correct his sentence [Doc. 45] pursuant to 28 U.S.C. § 2255, alleging that his attorney failed to appeal his sentence after the Petitioner asked him to do so.[3] The Government has responded [Doc. 50] in opposition to this motion, arguing that the Petitioner waived his right to appeal in his plea agreement and that Mr. Tollison has filed an affidavit stating that, to the best of his knowledge, the Petitioner did not ask him to file an appeal. On August 4, 2015, Chief United States District Judge Thomas A. Varlan referred [Doc. 56] this matter to the undersigned for an evidentiary hearing to determine a single issue: Whether the Petitioner did, in fact, ask his attorney to file a direct appeal on his behalf.

The undersigned held the evidentiary hearing on September 21, 2015. Attorney James H. Varner represented Petitioner Huskin. Assistant United States Attorney Cynthia F. Davidson appeared on behalf of the Respondent, the United States. The Court heard the testimony of the Petitioner and his former counsel and the arguments of the parties. On September 29, the undersigned directed [Doc. 61] defense counsel to supplement the record with the transcript of the sentencing hearing. The sentencing hearing transcript [Doc. 62] was filed on October 2, 2015. After reviewing the testimony, arguments, transcript of the sentencing hearing, and relevant case law, the Court finds that the Petitioner's motion to vacate his sentence should be denied, because the Petitioner did not ask his attorney to file a direct appeal.

## I. SUMMARY OF TESTIMONY

At the September 21 hearing, the Petitioner was sworn and testified in his own behalf that Assistant Federal Defender Kim Tollison represented him in his criminal case. He stated that he

---

[3] The Defendant also "supplemented" [Doc. 49] his motion with additional claims, but the District Judge has ruled [Doc. 56] that these additional claims are time-barred and meritless.

entered into a guilty plea. The Petitioner said he thought that the plea contained a waiver of appeal. He said that he reviewed his Presentence Investigation Report with Mr. Tollison and that, although Mr. Tollison had previously told him his guideline range would be 77 to 96 months, the report stated his guideline range was 155 to 188 months. The Petitioner stated that Mr. Tollison said he would address this discrepancy at the sentencing hearing. The Petitioner testified that at the sentencing hearing, Mr. Tollison argued that the Petitioner's guideline range should be the lower range, but the District Judge imposed the higher guideline range contained in the Presentence Investigation Report. The District Judge granted the Government's motion for a downward departure and sentenced the Petitioner to 120 months. The Petitioner testified that, at the end of the sentencing hearing, the District Judge told Mr. Tollison that if he did not agree with the ruling, he could appeal. According to the Petitioner, Mr. Tollison responded to Judge Varlan that he was going to appeal.

The Petitioner stated that while they were still seated at counsel table, he asked Mr. Tollison, "You're going to appeal this, right?" The Petitioner testified that Mr. Tollison replied, "Yeah." The Petitioner said that two and one-half weeks later, he telephoned Mr. Tollison and asked if he had filed the appeal. He said that Mr. Tollison told him he had not filed the appeal because it would not have done any good. The Petitioner stated that he believed Mr. Tollison was ineffective because it was his understanding that the appeal was going to be filed.

On cross-examination, the Petitioner agreed that Mr. Tollison explained all the provisions of the plea agreement to him but then stated that Mr. Tollison did not explain the waiver of appeal. He said that he did not understand that he could not file a direct appeal of his sentence. The Petitioner agreed that he would sign a document that he had not read. When asked about his exact words to Mr. Tollison, the Petitioner testified that before he left the courtroom after the

3

sentencing hearing, he asked Mr. Tollison, "So, you are going to file this, right?" He stated that Mr. Tollison said, "Yes."

The Petitioner said that he did not send Mr. Tollison any letters after he was sentenced but that he called Mr. Tollison two and one-half weeks after the sentencing hearing. The Petitioner said that when he asked about his appeal, Mr. Tollison said that it would not do any good. He said that Mr. Tollison did not explain what he meant by that. The Petitioner stated that he did not ask Mr. Tollison to explain because he was not happy with Mr. Tollison due to the sentence he had received. He stated that, as a result, he "was not really trying to talk to him," (Mr. Tollison). The Petitioner stated he thought that once he got to prison, he could "do legal work" for himself. The Petitioner agreed that Mr. Tollison pursued all the arguments that the Petitioner wanted him to make at the sentencing hearing and concluded that he did "n[o]t know exactly what he and Mr. Tollison said that day."

The Government called Mr. Kim Tollison, who was sworn and testified as follows: Mr. Tollison stated that he is a retired Assistant Federal Defender and that he served in that position for twenty years. He stated that before he retired in December 2011, he represented the Petitioner. He said that he explained every provision of the plea agreement, including the waiver of appeal, to the Petitioner before the Petitioner signed the plea agreement. He stated that he did not recall the Petitioner asking him to appeal his sentence following the sentencing hearing. He said that if a client requested that he file an appeal, his practice was to note that request in the client's file. Mr. Tollison said that he had reviewed the Petitioner's file and that it did not contain such a notation.

4

Case 3:08-cr-00170-TAV-HBG   Document 63   Filed 10/05/15   Page 4 of 13   PageID #: 471

Mr. Tollison testified that he does not recall a telephone call from the Petitioner but that the Petitioner sent him a letter[4] dated October 4, 2011. Mr. Tollison said that in this letter, the Petitioner asked him to send a copy of the transcript of the sentencing hearing or the name and address of the court reporter who transcribed the sentencing hearing. Mr. Tollison testified that in the letter, the Petitioner said that he did not think that Mr. Tollison would have a copy of the transcript because he did not appeal the sentence.

On cross-examination, Mr. Tollison explained that he argued the issue of the appropriate guideline range before Judge Varlan at the sentencing hearing but that Judge Varlan ultimately overruled his request to use the lower guideline range. He did not recall Judge Varlan saying that if he did not like the Court's ruling, he could file an appeal. He did not recall the Petitioner asking him if he was going to file an appeal. He also did not recall a telephone call from the Petitioner two weeks after the sentencing hearing or having any telephone conversation with the Petitioner after his sentencing hearing. He agreed that if the telephone conversation to which the Petitioner testified had occurred (to which he repeated that he did not recall the Petitioner ever calling him after sentencing), then the Petitioner would have known that Mr. Tollison did not file an appeal before he wrote the October 4, 2011 letter.

## II. ANALYSIS

The Petitioner claims that he received the ineffective assistance of counsel because he asked his attorney to file a direct appeal of his sentence and his attorney did not do so. The Government responds that the Petitioner did not ask Mr. Tollison to file a direct appeal. As discussed by the District Judge, in order to show that counsel was ineffective, a petitioner normally must show two prongs: (1) that the specific acts of his or her attorney were deficient as

---

[4] The Government did not introduce the October 4, 2011 letter into evidence.

5

Case 3:08-cr-00170-TAV-HBG   Document 63   Filed 10/05/15   Page 5 of 13   PageID #: 472

measured by "prevailing professional norms," Strickland v. Washington, 466 U.S. 668. 687 (1987), and (2) that there is "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial," Hill v. Lockhart, 474 U.S. 52, 58-59 (1985). Counsel is presumed to have provided effective assistance, and the petitioner shoulders the burden of proving otherwise. Mason v. Mitchell, 320 F.3d 604, 616-17 (6th Cir. 2003). The Petitioner "must prove his allegation that his lawyer[ was] constitutionally ineffective by a preponderance of the evidence." Pough v. United States, 442 F.3d 959, 964 (6th Cir. 2006).

Although the Petitioner affirmatively waived his right to file a direct appeal in his plea agreement, the Court of Appeals for the Sixth Circuit has held:

> [E]ven when a defendant waives all or most of his right to appeal, an attorney who fails to file an appeal that a criminal defendant explicitly requests has, as a matter of law, provided ineffective assistance of counsel that entitles the defendant to relief in the form of a delayed appeal.

Campbell v. United States, 686 F.3d 353, 360 (6th Cir. 2012); see also Pola v. United States, 778 F.3d 525, 532-33 (6th Cir. 2015). "[A]n attorney performs deficiently if, after consulting with his client, he 'disregards specific instructions' from his client 'to file a notice of appeal'—'a purely ministerial task.'" Pola, 778 F.3d at 533 (quoting Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000)). Thus, the sole issue remaining for the Court to determine is whether, as a matter of fact, Petitioner asked Mr. Tollison to file a direct appeal on his behalf.

In the instant case, the Petitioner has affirmatively testified that at the end of his sentencing hearing, while seated at counsel table with Mr. Tollison, he asked Mr. Tollison if he was going to appeal, and Mr. Tollison said "yes." At the evidentiary hearing, defense counsel argued that, in contrast to this positive testimony by the Petitioner, the Government presented

6

only the neutral testimony by Mr. Tollison that he did not recall whether or not the Petitioner asked him to file an appeal. Mr. Varner argued that the Petitioner's positive testimony is supported by Judge Varlan's statement at the sentencing hearing that the defense had the right to appeal and Mr. Tollison's reply that he intended to appeal.

The Court finds that the greater weight of the evidence contradicts the Petitioner's testimony that he confirmed with Mr. Tollison that he would file an appeal. First, Mr. Tollison testified that it is his practice when a client asks him to file an appeal, he makes a note of that in the client's file. Mr. Tollison testified that he reviewed the Petitioner's file and that it did not contain such a notation.

Second, the transcript of the July 7, 2011 sentencing hearing contradicts the Petitioner's testimony regarding the exchange between Judge Varlan and Mr. Tollison. During his argument about the two different guideline ranges, Mr. Tollison stated that he mistakenly told the Petitioner that the lower guideline range applied in this case. [Doc. 62, pp.12-13] Judge Varlan replied that he had expressly advised the Petitioner at the change of plea hearing that the actual sentence, along with the guideline range to be imposed, would be determined by the Court at the sentencing hearing. [Doc. 62, p.13] Mr. Tollison replied, "I just want to make it abundantly clear because *if* there is another proceeding that follows this at a later date *that Mr. Huskin brings*, I feel like it is only fair to him I place this on the record." [Doc. 62, p.13 (emphasis added)] The Court finds that these statements clearly reflect that Mr. Tollison anticipated that *the Petitioner,* rather than Mr. Tollison, might bring a future action—perhaps a motion pursuant to 18 U.S.C. § 2255 for the ineffective assistance of counsel, which motion is expressly exempted from the waiver of collateral attack of the sentence in the plea agreement.

Also at the sentencing hearing and near the end (not during the argument with regard to the appropriate guideline range), Judge Varlan advised the Petitioner "you *may* have the right to appeal the sentence imposed in this case" and that a notice of appeal "must be filed within 14 days of entry of judgment." [Doc. 62, p.43] Judge Varlan also advised the Petitioner, "[i]f you request and so desire, the clerk of court can prepare and file a notice of appeal for you." [Doc. 62, p.43] Mr. Tollison did not state or in any way indicate that he intended to file a notice of appeal following this advice or at any time during the sentencing hearing. This portion of the sentencing hearing transcript directly conflicts with the Petitioner's testimony that Judge Varlan informed Mr. Tollison that he could appeal the ruling and that Mr. Tollison stated that he intended to do so.

Third, Mr. Tollison did not recall the Petitioner calling him two and one-half weeks following the sentencing hearing. The Court notes that if the Petitioner had called Mr. Tollison two and one-half weeks from July 7, Mr. Tollison likely would have still had time to file a notice of appeal, because the Judgment of conviction was entered on July 12, 2011. In any event, the Petitioner's testimony that he did not press Mr. Tollison about why he did not file the appeal because he was mad at him and thought that he would have time to do his own legal work once he arrived at prison is contradicted by Judge Varlan's admonition to the Petitioner at the sentencing hearing that he had only fourteen days from entry of the Judgment to file a notice of appeal.

Fourth, Mr. Tollison testified that in the Petitioner's file, he had a letter from the Petitioner dated October 4, 2011, in which the Petitioner requested the name and address of the court reporter who transcribed the sentencing hearing. Mr. Tollison stated that the letter states that the Petitioner did not believe Mr. Tollison would have a copy of the sentencing hearing

8

transcript because he did not appeal the sentence. The Petitioner and the Respondent have opposing interpretations of this comment. The Petitioner argues that he knew Mr. Tollison had not filed a notice of appeal because he called him two and one-half weeks after the sentencing hearing and asked if he had filed the appeal. The Government argues that the Petitioner knew that Mr. Tollison had not ordered a transcript of the sentencing hearing because the Petitioner did not ask him to appeal the sentence. Unfortunately, the Government did not place the letter into evidence, so the Court cannot perform its own interpretation of the language of the letter. However, the contradictions to the telephone call discussed above detract from the Petitioner's interpretation.

Finally, the Court finds that the Petitioner's credibility is called into question by his testimony regarding whether Mr. Tollison advised him of the appeal waiver provision in the plea agreement. At the evidentiary hearing, both the Petitioner and Mr. Tollison testified that Mr. Tollison reviewed the entire plea agreement with the Petitioner. However, the Petitioner testified that Mr. Tollison did not review the appeal waiver with him and that at the time he entered into his plea agreement, he did not understand that he could not appeal his sentence. Mr. Tollison testified that he reviewed the appeal waiver with the Petitioner. At his change of plea hearing on December 9, 2009, the Defendant agreed under oath that his attorney had explained the terms of the plea agreement to him and that he was satisfied with the advice that Mr. Tollison gave him. [Doc. 36, p.6]. Also at that hearing, Judge Varlan advised the Petitioner of the appeal waiver and the Petitioner agreed he understood. [Doc. 36, p.9] Thus, the Court finds that the Petitioner knew, at his sentencing hearing, that he could not bring a direct appeal of his sentence except that he could appeal a sentence imposed above the guideline range determined by the Court. The Court finds that the Petitioner's testimony that he did not understand that he had waived his right

9

to appeal to be incredible and to detract from the credibility of his testimony that he asked Mr. Tollison to file an appeal at the conclusion of his sentencing hearing.[5]

For these reasons, the Court finds that the Petitioner has failed to show by a preponderance of the evidence that he asked his attorney to file an appeal. Instead, the Court credits the Government's position and finds that the Petitioner did not ask Mr. Tollison to file a direct appeal of his sentence at the conclusion of the sentencing hearing. Thus, the undersigned recommends that the Petitioners motion to vacate, set aside, or correct his sentence [Doc. 45] be denied.

### III. CERTIFICATE OF APPEALABILITY

The District Judge has also directed [Doc. 56, p.5] the undersigned to make a recommendation regarding whether the Court should issue a certificate of appealability with regard to all issues raised by the Petitioner in his § 2255 motion. Pursuant to 18 U.S.C. § 2253(c)(1)(B), an appeal of the final order in a proceeding under § 2255 may not be taken to the appellate court unless a certificate of appealability is issued. "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 18 U.S.C. § 2253(c)(2). In the instant case, the Petitioner has raised three issues in his motion and supplemental motion: (1) that he received the ineffective assistance of counsel

---

[5] The Court also finds that the Petitioner's credibility is further undermined by a prior act of dishonesty that he committed while released on conditions set by the undersigned. On January 6, 2009, the Court accepted an agreement between the Petitioner and the Government that the Petitioner could be released on conditions pending his trial. The Court imposed conditions [Doc. 8] on the Petitioner's release, including that he participate in drug testing as directed by his supervising probation officer. Less than a month later, a Petition for Action on Conditions of Pretrial Release [Doc. 10] issued. Following a hearing on this petition, the Petitioner was again released on conditions [Doc. 19], including drug testing. Less than a month from the Petitioner's second release on conditions, the undersigned revoked his release [Doc. 22] based upon the testimony of United States Probation Officer C.W. Covert [Doc. 23] that the Petitioner attempted to submit a fake sample for his drug test immediately before the hearing.

because his attorney did not file a direct appeal of his sentence despite Petitioner asking him to do so, (2) that his sentence is invalid because the Government enhanced his sentence with prior convictions that do not qualify under the United States Sentencing Guidelines, and (3) that his sentence is invalid pursuant to the holding in Carachuri-Rosendo v. Holder, 130 S.Ct. 2577 (2010).

As to the Petitioner's first claim, that his attorney provided the ineffective assistance of counsel by failing to file a notice of appeal after the Petitioner directed him to do so, the undersigned has determined that the Petitioner did not ask his attorney to file a direct appeal. Because the Petitioner has failed to show that Mr. Tollison's representation was deficient, he has also failed to make a substantial showing that he has been denied a constitutional right.

With regard to the Petitioner's second claim, the District Court has ruled [Doc. 56] that it is not timely filed because it does not relate back to the claims in his initial § 2255 motion. Additionally, the District Judge found that even if this claim was properly considered, it is meritless because the Petitioner's assessed criminal history points did not establish his criminal history category or affect the applicable guideline range. Instead, the Petitioner's criminal history category was based upon his status as a career-offender. At his sentencing hearing, the Defendant affirmed his prior convictions for aggravated burglary on November 19, 2001, and possession of marijuana for resale on August 16, 2004, that qualified him as a career offender and agreed that he could not challenge these prior convictions after his sentence was imposed. [Doc. 62, pp. 5-6] Because the issues with regard to his prior convictions raised by the Petitioner do not affect his sentence,[6] the undersigned finds that the Petitioner has not made a substantial showing of a denial of a constitutional right.

---

[6] In his supplemental memorandum [Doc. 49], the Petitioner agrees that his conviction for aggravated burglary qualifies as a predicate offense to his career offender status. He objects to

11

As for the Petitioner's third claim, the District Judge found [Doc. 56] that this claim was not timely filed because it does not relate back to the claims in the Petitioner's initial § 2255 motion. The District Judge also found that even if it were to consider the Petitioner's argument, the case raised by the Petitioner, Carachuri-Rosendo, does not apply to the Petitioner's case, nor would it affect the Petitioner's status as a career offender. In Carachuri-Rosendo, the Supreme Court held that a second conviction for simple drug possession was not an "aggravated felony" for purposes of immigration law. 130 S.Ct. at 566. Obviously, this decision has nothing to do with the Petitioner's status as a career offender, because simple possession is not one of his predicate offenses and, to the Court's knowledge, the Immigration and Nationality Act, 8 U.S.C. § 1101, et seq., is irrelevant to this case. Accordingly, the Court finds that the Petitioner has not made a substantial showing of a denial of a constitutional right with regard to his third claim.

The Court finds that the Petitioner has failed to make a substantial showing of a denial of a constitutional right for any of the three claims he raises in his § 2255 motion or supplemental memorandum. Accordingly, the undersigned recommends that the District Judge deny a certificate of appealability in this case.

---

his prior conviction for possession of marijuana as a qualifying predicate offense, arguing that possession of marijuana for resale only demonstrates that he possessed the drug with a certain intent, not that he actually distributed or trafficked in marijuana. Our appellate court has "always treated a violation of [Tennessee Code Annotated] § 39–17–417[, which prohibits the possession of a controlled substance with the intent to manufacture, deliver or sell it,] as a categorical controlled substance offense" making it a qualifying predicate offense for career offender status. United States v. Douglas, 563 F. App'x 371, 377 (6th Cir. 2014). Thus, besides being waived and untimely, the Petitioner's challenge to his career offender status is utterly lacking in merit.

## IV. CONCLUSION

For the reasons stated herein, the undersigned finds that the Petitioner did not ask his attorney to file a direct appeal of his sentence. Accordingly, the Court respectfully **RECOMMENDS** that the Petitioner's motion to vacate, set aside, or correct his sentence [**Doc. 45**] be denied. The undersigned also recommends that no certificate of appealability be issued with regard to any of the Petitioner's claims in either his motion [**Doc. 45**] or his supplemental memorandum [**Doc. 49**].[7]

Respectfully submitted,

*Bruce Guyton*
United States Magistrate Judge

---

[7] Any objections to this report and recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Crim. P. 59(b)(2) (as amended). Failure to file objections within the time specified waives the right to review by the District Court. Fed. R. Crim. P. 59(b)(2); see United States v. Branch, 537 F.3d 582, 587 (6th. Cir. 2008); see also Thomas v. Arn, 474 U.S. 140, 155 (1985) (providing that failure to file objections in compliance with the required time period waives the right to appeal the District Court's order). The District Court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive, or general. Mira v. Marshall, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370, 1373 (6th Cir. 1987).